UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSE M. FONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1559 (RC) |
| | ) | |
| | ) | |
| UNITED STATES | ) | |
| GOVERNMENT *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

### I.  INTRODUCTION

Plaintiff, appearing *pro se*, has sued the federal government, Homewood Suites by Hilton, and Hilton's President and Chief Executive Officer for equitable relief and monetary damages. The complaint arises from actions taken by the Federal Emergency Management Agency ("FEMA") under the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act").[1] In August 2018, the complaint against the private defendants was dismissed under the screening provisions of 28 U.S.C. § 1915 for failure to state a claim, and the complaint against the federal government was allowed to proceed. *See* Mem. Op. and Order, ECF No. 5. Pending before the Court is the government's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a

---

[1]  The Stafford Act "authorizes the President to provide relief in response to major disasters," and the "President has delegated authority under the Stafford Act" to FEMA. *Barbosa v. United States Dep't of Homeland Sec.*, 916 F.3d 1068, 1069 (D.C. Cir. 2019) (citing 42 U.S.C. §§ 5121 *et seq.*).

claim upon which relief can be granted, ECF No. 14. For the reasons that follow, the Court finds that the claims for equitable relief are moot and jurisdiction is lacking over the claim for monetary damages. Accordingly, the government's motion will be granted.

## II. BACKGROUND

Plaintiff is one of thousands of individuals forced to evacuate Puerto Rico after Hurricane Maria struck the island on September 20, 2017.[2] *See Santos v. Fed. Emergency Mgmt. Agency*, 327 F. Supp. 3d 328, 335 (D. Mass. 2018) (discussing "Hurricane Maria and its Aftermath"). Under FEMA's Transitional Sheltering Assistance ("TSA") program, plaintiff was provided temporary housing at the Homewood Suites by Hilton in the District of Columbia. *See* Compl. at 4; Pl.'s Mot. in Aid (Federal) Jurisdiction ¶ 2, ECF No. 3; *see also Santos*, 327 F. Supp. 3d at 331 n.1 ("In simple terms, the TSA program provides direct funding to hotels and motels, which serve as shelters for individuals and families who are forced to evacuate their damaged or destroyed homes due to a natural disaster.").

Plaintiff alleges that in January 2018 while residing at Homewood Suites, he was diagnosed with prostate cancer and received treatment at the Veterans Affairs Medical Center in the District. He was scheduled for surgery on July 12, 2018, and needed a minimum of six weeks to recover. *See* Compl. at 2, 4. Allegedly in January 2018, a "functionary of FEMA" named "Mr. Ortega" told plaintiff that he had "authority delegated by FEMA" and not to "worry" because "FEMA extended [plaintiff's] time at Homewood Suites . . . until February 15, 2018 and will automatically [extend it] 6 more months[.]" Compl. at 4 ¶ 6. Mr. Ortega also

---

[2] Plaintiff's factual allegations in the complaint and subsequent filings are liberally construed and accepted as true for current purposes.

told plaintiff that FEMA was aware of his economic situation and was "willing to give [him] 8 months or more" of temporary housing at Homewood Suites to allow him time to find an apartment and "permanently stay in Washington D.C." *Id*.

On June 28, 2018, two days before the TSA program was to expire, plaintiff filed this *pro se* action.[3] The complaint seeks monetary damages exceeding $5 million and "emergency" injunctive and mandamus relief to remain at Homewood Suites for at least six weeks to recover from the aforementioned surgery. *See* Compl. at 2, 4. In mid-September 2018, plaintiff moved to the Cambridge Apartments in the District's northwest quadrant, *see* Pl.'s Emer. Mot. at 3-4, ECF No. 7 (leasing documents), which coincided with the termination of the TSA program for Puerto Rican evacuees. *See Santos*, 327 F. Supp. 3d at 345 (vacating temporary restraining order and "ordering that the Defendants and their agents refrain from terminating the program which provides the payment for shelter for the Plaintiffs (including the class) until midnight September 13, 2018").

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction [.]" *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375,

---

[3] Pursuant to the Stafford Act, FEMA approved the Governor of Puerto Rico's request for emergency "transitional sheltering assistance" and began providing "short-term sheltering" to displaced residents of Puerto Rico on October 31, 2017. Decl. of Keith Turi ¶ 41, ECF No. 14-2. The assistance was to end initially on January 13, 2018, but FEMA agreed to multiple extensions; the final being June 30, 2018. *Id*., Ex. 9, ECF No. 14-2 at 110-11. TSA participants were required "to sign a Terms and Conditions agreement that informed them of the program end date, and that they would be liable for all costs beyond that end date if the program was not extended." Turi Decl. ¶ 42. Participants also "received biweekly reminders via their designated choice of phone, email or text[.]" *Id*. ¶ 43. Upon each extension, participants "signed a new Terms and Conditions form" and received biweekly reminders of the new end date. *Id*. ¶¶ 44-46. Presumably, plaintiff filed this action upon receiving notice of the final extension.

377 (1994); *see also Gen. Motors Corp. v. E.P.A.*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). Thus, the Court is not limited to the allegations contained in the complaint. *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

## IV. DISCUSSION

**1. Mootness**

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. 3, § 2. The doctrines of standing, mootness, and ripeness are "[t]hree inter-related" doctrines of justiciability that determine the "constitutional boundaries" of a court's jurisdiction. *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 102 (D.D.C. 2016) (quoting *Worth v. Jackson*, 451 F.3d 854, 855, 857 (D.C. Cir. 2006)). The D.C. Circuit has explained that "'[f]ederal courts lack jurisdiction to decide moot cases because their

4

constitutional authority extends only to actual cases or controversies.'" *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). A case becomes "'moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 3 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *see accord Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (explaining that a "case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party") (internal quotation marks and citations omitted)).

Plaintiff's claims for injunctive and mandamus relief became moot in September 2018 when the TSA program for Puerto Rican evacuees expired and plaintiff moved to the Cambridge Apartments, apparently from Homewood Suites.[4]

**2. Claim for Monetary Relief**

As indicated above, plaintiff seeks at least $5 million in damages from the government. *See* Compl. at 1; Pl.'s Opp'n to Mot. to Dismiss at 2, ECF No. 16 (requesting payment of "40 million dollars plus interests 7% monthly[ ] from January 10, 2018"). This claim is best interpreted as one for breach of contract based upon Mr. Ortega's alleged assurances to plaintiff as a "FEMA functionary."[5] Compl. at 4. Under the Tucker Act, however, the district court has

---

[4] Nothing in the record reflects a change of plaintiff's address before September 2018. Absent notification to the contrary, the address listed on the complaint is "conclusively taken as the last known address . . . of the party[.]" LCvR 5.1(c)(1). Therefore, it is reasonable to conclude that plaintiff still lived at Homewood Suites at the time he might have had surgery and needed to recover.

[5] To the extent that plaintiff is seeking money damages based upon the various constitutional

5

concurrent jurisdiction with the U.S. Court of Federal Claims to hear non-tortious claims against the federal government "not exceeding $10,000." 28 U.S.C. § 1346(a)(2). A claim exceeding that amount, such as in this case, lies exclusively in the Court of Federal Claims. *Palacios v. Spencer*, 906 F.3d 124, 127 (D.C. Cir. 2018).

## V. CONCLUSION

For the foregoing reasons, the government's motion to dismiss for want of subject matter jurisdiction is granted. A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date: April 15, 2019

---

provisions mentioned throughout his filings, sovereign immunity shields the federal government and its agencies from certain suits and is "jurisdictional in nature." *American Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (other citations omitted)); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). A waiver of sovereign immunity "must be unequivocally expressed in statutory text" and "will be strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). It is long-established that the United States has not consented to be sued for money damages arising from constitutional violations. *See Meyer*, 510 U.S. at 476-78.